## BENJAMIN C. WARD *vs.* SETH ALLEN.

It is no defence to an action by a *bonâ fide* holder of a bill of exchange against the acceptor, that the bill was fraudulently altered before acceptance.

A bill of exchange, payable in three days, was indorsed by the payee for the accommodation of the drawer who altered it to thirty days and put it into circulation : On discovering the alteration, the holder, and the payee who had indorsed it, made an arrangement with the drawer, by which the payee gave security to the holder for half the amount of the bill, and the drawer gave security to the holder for the balance, and the bill was returned to the payee : The payee thereupon presented the bill to the drawee, without disclosing to him the alteration or the said arrangement with the drawer, and read it to him as it was altered, and the drawee said it was correct and should be paid. *Held,* that the drawee was bound by this acceptance.

To render a promise void on the ground that the consideration thereof was the stifling of a criminal prosecution, it is necessary that the promise should be made for gain, and not merely from motives of kindness and compassion.

ASSUMPSIT on the following bill of exchange accepted by the defendant. "New Bedford, March 7th, 1838. Thirty days from date, value received, please pay to the order of Benj. C. Ward five hundred dollars at East Bridgewater Bank, and place the same to my account, and oblige yours, Wm. H Crocker. To Mr. Seth Allen."

At the trial, the presiding judge refused to permit the bill to be given in evidence, until the plaintiff should explain an alteration therein, which was apparent on inspection. The plaintiff then introduced Eliphalet Cushman as a witness, who testified that the plaintiff presented the bill to the defendant, on the 23d of March, 1838, and read to him the first line of it, and asked him if it was right, and that the defendant said it was correct and should be paid ; and that the plaintiff need not send it to the bank at Bridgewater, for collection, but that it should be paid at New Bedford : That the plaintiff "read the bill to the defendant as it now reads, and laid it down on a bench before him."

The bill was then read to the jury, and the plaintiff rested his case.

The defendant contended that the plaintiff had practised a fraud upon him in procuring said acknowledgment and promise ; and also that the consideration of the transfer of the bill to the

plaintiff was, in part, the stifling of a criminal prosecution ; and. the following facts were stated by said Cushman, on his cross-examination by the defendant's counsel.

Said Cushman took the bill, on the 16th of March, 1838, in its present form, with the indorsement of the plaintiff's rame thereon, and on the next day presented it to the plaintiff, and asked him if it was correct. The plaintiff told him that the bill had been altered from *three* to *thirty* days, after he had indorsed it. The plaintiff and the witness then agreed to say nothing about the matter, till the witness should return from a short journey he was about to take. He returned on the 21st of March, found Crocker, the drawer, and took him to the plaintiff's house, where the plaintiff told Crocker that the bill had been altered ; whereupon the plaintiff and Crocker went into a room by themselves, and the plaintiff soon returned, leaving Crocker behind, and told the witness that Crocker had acknowledged that the time had been altered in the bill, from three to thirty days. The witness then told the plaintiff that he would not leave Crocker, until he had security ; but said nothing about an arrest. The plaintiff then went into the room where Crocker was, and soon returned and said he (the plaintiff) would be responsible for the $ 500, until the next day, at 10 o'clock. At that hour, on the next day, the plaintiff, the witness, and Crocker, came together, and after sundry proposals and offers by Crocker and the plaintiff, which the witness rejected, it was agreed that the plaintiff should give the witness a note for $ 250, and that Crocker should give him a draft on his brother Edward Crocker for $ 500, accepted by said Edward, and that the witness should give up to the plaintiff the bill now in suit. This. agreement was executed on the same day ; and it was further agreed among the parties thereto that Wm. H. Crocker should not be exposed, and that nothing should be said about the alteration of the bill. The witness, during these negotiations, made no claim on the plaintiff as indorser of the bill, but considered him discharged by said alteration thereof.

When the bill was carried to the defendant, as before mentioned, the plaintiff and the witness called him out of his store

into a mechanic's shop, but did not tell him for what purpose, nor say any thing to him about an alteration in the bill, or any thing that had taken place. The parties were together not more than two or three minutes ; and the witness believed that the defendant did not take the bill into his hands.

On reëxamination by the plaintiff's counsel, the witness said that when the plaintiff gave him the $ 250 note, it was done to save Crocker from being exposed, and that the plaintiff might obtain pay from him of other demands. The witness understood at the time, that the plaintiff was on other paper of Crocker, and that Crocker made over to him, for his security, bills which Crocker had against several other persons. The plaintiff told the witness that he gave him the said note, " that he might get his pay on his demands against Crocker, and to prevent him from being arrested."

The witness also said that it was after the plaintiff gave him the $ 250 note, and after the other papers were delivered, that it was agreed that it must be kept private ; but at the same inter view. He " believed nothing had been said before about keeping it secret." Crocker left New Bedford on the 24th of March, 1838. On the 21st of March, the witness told one person, confidentially, of the alteration of the bill, and that person told it to others, so that the witness heard of it several times before ne obtained the $ 250 note, &c. The defendant, at this time was with Edward Crocker, and in the same shop with him, in New Bedford.

Edward Crocker, brother of William H. Crocker, was called as a witness by the defendant, and testified that in conversations between the plaintiff and the witness, on the 25th and 26th of March, 1838, the plaintiff said that when the bill was presented to him by Cushman, it had been altered from three to thirty days, and that he gave the note for $ 250 to hush the matter ; and that Cushman threatened to prosecute Wm. H. Crocker. He further testified that he sold his stock in trade to the defendant immediately after the above mentioned affair of Wm. H. Crocker, and had since acted as the defendant's clerk, and was not concerned in business with him : That the defendant is

brother-in-law of Wm. H. Crocker, but, as the witness believed, had never acted as clerk for him.

It was proved or admitted, at the trial, that the plaintiff indorsed the bill now in suit for the accommodation of the drawer.

The jury returned a verdict for the plaintiff, and the defendant moved for a new trial on the ground that the verdict was against law and evidence.

*Colby & Clifford*, for the defendant.

*Eliot*, for the plaintiff.

WILDE, J. This was an action of assumpsit against the defendant on his acceptance of a bill of exchange or draft, drawn by one Wm. H. Crocker in favor of the plaintiff; and on the evidence reported the jury returned a verdict for the plaintiff. The defendant thereupon moved for a new trial on the ground that the verdict was against the law and the evidence.

In the first place, it has been argued that the defendant's acceptance was fraudulently procured by the plaintiff; that the draft had been altered after it was indorsed by him, and that although he had knowledge of that fact, he did not disclose it to the defendant, as he was bound to do.

It appears by the report of the evidence, that the draft was indorsed by the plaintiff for the accommodation of Crocker, and that it was afterwards altered by Crocker and transferred to one Eliphalet Cushman. This fraudulent alteration being discovered, Cushman demanded security of Crocker, which he agreed to give, and at his request the plaintiff gave his note to Cushman for the sum of $ 250 — and Crocker gave other security for the residue, and thereupon the altered draft was given up by Cushman, and delivered to the plaintiff for his security. This was a new contract ; and the altered draft was equally valid in favor of the plaintiff, as a new draft of the same tenor would have been. The plaintiff had been guilty of no fraud, and this new contract, being made on a good consideration, was clearly a good and legal contract. It was not vitiated by the previous fraudulent conduct of Crocker. And the plaintiff, we think, was under no obligation to disclose the fraud to the defendant. He certainly could not be prejudiced by the alteration     He

accepted the draft as altered, and is clearly bound by his acceptance. *Langton* v. *Lazarus*, 5 Mees. & Welsb. 629. The alteration discharged the plaintiff from his liability to Cushman, on the first contract, but it can have no effect on the subsequent contract between Crocker and the plaintiff. If that was a valid contract, the altered draft, when delivered to the plaintiff, became a valid security, which the previous alteration would not vitiate. The plaintiff therefore was not bound to disclose his knowledge of that fact to the defendant.

The second ground of defence is, that the new contract between the plaintiff and Crocker is void, the consideration being in part illegal, namely, for the compounding of a crime ; and that the order on the defendant was given to the plaintiff on his agreement with Crocker not to prosecute him for the forgery.

This ground of defence also, we think, is not maintained by the evidence. There was no express agreement not to prosecute ; and if a promise not to expose Crocker should be considered as equivalent to an agreement not to prosecute him, that promise was made after the plaintiff had given his note to Cushman and the draft had been delivered to the plaintiff for security. The promise of secrecy, therefore, whether right or wrong, legal or illegal, formed no part of the consideration of the contract in pursuance of which the draft on the defendant was given.

But if the promise had been made before the draft was given, it would not vitiate the contract. To render such a promise illegal, so as to vitiate a contract, it must appear to have been made for the sake of gain, and not merely from motives of kindness and compassion. 16 Mass. 94.

Now it is very clear, from the report of the evidence, that the plaintiff did not promise secrecy under any expectation of gain. On the contrary, he agreed to incur a new responsibility for Crocker, and for his indemnity agreed to take very doubtful security ; for, at the time, it could not have been known that the defendant would accept the draft. It is apparent, therefore, that the plaintiff did not promise secrecy for the sake of gain, but from motives of compassion. He might also have been in

duced to promise secrecy, by the expectation that by not ex-
posing Crocker immediately, he might have a better chance to
secure the other demands he held against him.    But if the
plaintiff acted under the influence of such a motive, it would not
vitiate the contract.    Nothing fraudulent or illegal has been
proved against the plaintiff, and the defendant therefore is clear-
ly liable on his acceptance.

*Judgment on the verdict.*